IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
FLORENCE DIVISION

| | |
|---|---|
| Angel Fowler, ) | |
| ) | |
| Plaintiff, ) | Case No. 4:10-cv-01000-RMG |
| ) | |
| v. ) | **ORDER** |
| ) | |
| Michael J. Astrue, Commissioner of Social ) | |
| Security, ) | |
| ) | |
| Defendant. ) | |
| _____ ) | |

Through this action, Plaintiff seeks judicial review of the final decision of the Commissioner denying Plaintiff's claim for Supplemental Security Income ("SSI") and Disability Insurance Benefits ("DIB"). In accordance with 28 U.S.C. § 636(B) and Local Rule 73.02, D.S.C., this matter was referred to a Magistrate Judge for pretrial handling. The Magistrate Judge recommended that the decision of the Commissioner be affirmed. (Dkt. No. 22.) Plaintiff objected to the Magistrate Judge's recommendation. (Dkt. No. 24.) After having conducted a *de novo* review of the Record and considering the objections, the Court adopts the recommendation of the Magistrate Judge. Thus, for reasons set forth below, the Court affirms the Commissioner's decision.

**STANDARD OF REVIEW**

The Magistrate Judge makes only a recommendation to this court. The recommendation has no presumptive weight, and the responsibility to make a final determination remains with the court. Mathews v. Weber, 423 U.S. 261 (1976). The court is charged with making a *de novo* determination of those portions of the Report to which specific objection is made, and the court may accept, reject,

or modify, in whole or in part, the recommendation of the Magistrate Judge, or recommit the matter to him with instructions. 28 U.S.C. § 636(b)(1).

The role of the federal judiciary in the administrative scheme established by the Social Security Act is a limited one. Section 205(g) of the Act provides, "[t]he findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive...." 42 U.S.C. § 405(g). "Substantial evidence has been defined innumerable times as more than a scintilla, but less than a preponderance." Thomas v. Celebrezze, 331 F.2d 541, 543 (4th Cir.1964). This standard precludes a *de novo* review of the factual circumstances that substitutes the court's findings for those of the Commissioner. Vitek v. Finch, 438 F.2d 1157 (4th Cir.1971). The court must uphold the Commissioner's decision as long as it is supported by substantial evidence. Blalock v. Richardson, 483 F.2d 773, 775 (4th Cir.1972). "From this it does not follow, however, that the findings of the administrative agency are to be mechanically accepted. The statutorily granted right of review contemplates more than an uncritical rubber stamping of the administrative action." Flack v. Cohen, 413 F.2d 278, 279 (4th Cir.1969). "[T]he courts must not abdicate their responsibility to give careful scrutiny to the whole record to assure that there is a sound foundation for the [Commissioner's] findings, and that his conclusion is rational." Vitek, 438 F.2d at 1157-58.

The Commissioner's denial of benefits shall be reversed only if no reasonable mind could accept the record as adequate to support that determination. Richardson v. Perales, 402 U.S. 389, 401 (1971). The Commissioner's findings of fact are not binding, however, if they were based upon the application of an improper legal standard. Coffman v. Bowen, 829 F.2d 514, 517 (4th Cir.1987).

# DISCUSSION

Plaintiff was 30 years old on the date of the alleged disability onset date, and she alleges disability since October 1, 2005 due to diabetes, obesity, and anxiety. The ALJ issued a decision dated February 18, 2009, finding that Plaintiff was not disabled. (Tr. 14-27.) The ALJ's decision stated, *inter alia*,

> 3. The claimant has the following severe impairments: diabetes mellitus, obesity, and anxiety (20 CFR 404.1521 et. seq.).
>
> 4. The claimant does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1525 and 404.1526).
>
> 5. After careful consideration of the entire record, I find that the claimant has the residual functional capacity to perform medium work as defined in 20 CFR 404.1567(c). I specifically find that she can lift or carry 50 pounds occasionally and 25 pounds frequently, and she can sit, stand, or walk for six hours, each, of an eight hour work day. I also find that she is limited to performing low stress jobs (no high production pace or public interaction).
>
> 6. The claimant is unable to perform any past relevant work (20 CFR 404.1565).
>
> 7. The claimant was born on May 5, 1975 and was 30 years old, which is defined as a younger individual age 18-49, on the alleged disability onset date (20 CFR 404.1563).
>
> 8. The claimant has at least a high school education and is able to communicate in English (20 CFR 404.1564).
>
> 9. Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills (See SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).
>
> 10. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 404.1569 and 404.1569a).
>
> 11. The claimant has not been under a disability, as defined in the Social Security

> Act, from October 1, 2005 through the date of this decision (20 CFR 404.1520(g)).

(Tr. 16-26.) The Appeals Council denied the Plaintiff's request for review, and the Plaintiff thereafter filed the instant action on October 27, 2010.

In her brief, the Plaintiff raises the following issues:

> 1) Did the ALJ err by failing to consider the Plaintiff's severe impairment of obesity?
>
> 2) Did the ALJ err by failing to evaluate Dr. Ruffing's opinion regarding the Plaintiff's mental residual functional capacity?
>
> 3) Did the ALJ commit reversible error by failing to engage in the proper analysis of the Plaintiff's complaints of pain?
>
> 4) Should the Appeals Council have explained consideration of new evidence that was submitted?

(Pl.'s Br. at 1.)

The Magistrate Judge recommended the Commissioner's decision to deny benefits be affirmed. (Dkt. No. 22.) First, the Magistrate Judge rejected Plaintiff's argument that the ALJ failed to consider the Plaintiff's severe impairment of obesity, stating,

> The ALJ was clearly aware of the Plaintiff's obesity, having determined it was a severe impairment. In determining the Plaintiff's RFC, the ALJ thoroughly discussed all of the evidence presented in this case. The ALJ specifically noted the Plaintiff's weight and diagnosis of obesity and as stated concluded that her obesity was a severe impairment. The ALJ discussed the Plaintiff's testimony at the hearing that her obesity made it difficult for her to stand up and walk around. (Tr. 21.) Furthermore, the ALJ gave "great weight" to the opinion of the state agency medical consultant, Dr. George Chandler. (Tr. 23.) Dr. Chandler found that the Plaintiff's primary diagnosis was obesity, but she could still lift and carry 50 pounds occasionally and 25 pounds frequently; stand and/or walk about six hours in an eight-hour workday; and sit about six hours in an eight-hour workday. (Tr. 285-92.)

(R&R at 7-8.) The Magistrate Judge further noted that the record "does not contain any medical

opinions or treatment notes indicating that the Plaintiff has any additional limitations arising from her obesity other than the limits set forth by the ALJ in the RFC." (Id. at 8.) In her Objections, Plaintiff contends the Magistrate Judge "erred in finding that the ALJ correctly considered and analyzed the claimant's severe obesity." (Objections at 2.) Plaintiff asserts that remand is proper because the ALJ's finding that her obesity was severe is inconsistent with the RFC that contains "no limitation resulting from the obesity." (Id.) Plaintiff further states that she has shown that there is "*some evidence*" of impairment relating to obesity because she testified "that her weight made it difficult to stand up and walk around, a rather critical component of most jobs." (Id. at 2 n.4.)

To the extent Plaintiff argues that a "severe" impairment at step two automatically means a limitation on the individual's RFC, the Court disagrees. To establish a severe impairment, a claimant must provide medical evidence that her impairment significantly limits her ability to perform "basic work activities." See Bowen v. Yuckert, 482 U.S. 137, 140-42 (1987) ("An impairment is not severe if it does not significantly limit [the claimant's] physical or mental ability to do basic work activities."); see also 20 C.F.R. § 404.1520(c). For an impairment to be considered severe, a plaintiff need only demonstrate something beyond "a slight abnormality or a combination of slight abnormalities which would have no more than a minimal effect on an individual's ability to work." SSR 85-28, 1985 WL 56856 (1985); see also Evans v. Heckler, 734 F.2d 1012, 1014 (4th Cir.1984) ("[A]n impairment can be considered as 'not severe' only if it is a slight abnormality which has such a minimal effect on the individual that it would not be expected to interfere with the individual's ability to work, irrespective of age, education, or work experience."); Albright v. Comm'r., 174 F.3d 473, 474 n.1 (4th Cir.1999). In short, the "inquiry

is a *de minimis* screening device to dispose of groundless claims." McCrea v. Comm'r, 370 F.3d 357, 360 (3d Cir. 2004). Simply because Plaintiff has a "severe" impairment does not mean such impairment necessarily limits Plaintiff's RFC. See Augusto v. Comm'r, No. 6:06-cv-1889-Orl-DAB, 2008 WL 186541, at *5 (M.D. Fl. Jan. 18, 2008) ("The ALJ's determination that Plaintiff's depression was "severe" at step two, but the functional impact on activities of daily living, social functioning, maintaining, concentration, persistence and pace, or episodes of decompensation were none or mild is not "irreconcilable" and is supported by substantial evidence."); Lane v. Astrue, No. 2:06-CV-445, 2008 WL 53706, at *7 (E.D. Tenn. Jan. 3, 2008) (rejecting the plaintiff's argument that the ALJ's inclusion of depression and anxiety in the step two "severity" analysis means those conditions must "also therefore 'significantly limit' her ability to do basic work activities at step five").

While the ALJ did conclude that Plaintiff's obesity was severe, the ALJ also noted that while "there are fairly extensive treatment notes from several physicians in the record, . . . the volume of records is starkly contrasted by the repeatedly normal and routine objective findings." (Tr. 16.) Plaintiff points out in her Objections that there is "some evidence" of impairment relating to obesity because she testified that her weight makes it difficult to stand up and walk around. (Objections at 2 n.4.) Such an observation is true but does not mean the ALJ's decision was not supported by substantial evidence. The testimony to which Plaintiff points was noted in the ALJ's decision but was found not credible because, *inter alia*, (a) the "fairly high volume of medical evidence repeatedly shows that there is no basis for the limitations she testified to," (b) the record contains the appearance of drug-seeking behavior, and (c) claimant demonstrated a limp when she saw Dr. Korn in June of 2006 for a physical examination, but a few weeks later,

in July of 2006, Dr. Thompson noted Plaintiff's "ambulation appeared to be within normal limits" when Plaintiff went for a psychological evaluation. (Tr. 24.) The Court therefore concludes Plaintiff's first objection is without merit.

The Magistrate Judge also rejected Plaintiff's argument that the ALJ erred by failing to evaluate Dr. Ruffing's opinion regarding Plaintiff's mental RFC. (See R&R at 8-10.) The Magistrate Judge stated,

> The ALJ adequately accounted for the opinion of Dr. Ruffing and explained the weight she gave it by including his narrative findings in the RFC assessment. This is a reasonable interpretation of the evidence, and the ALJ provided adequate specific, legitimate reasons supported by substantial evidence for rejecting the limitations assessed by Dr. Ruffing.

(Id. at 10.) In her Objections, Plaintiff asserts that Magistrate Judge erred in finding the ALJ adequately considered Dr. Ruffing's opinion. (Objections at 6.) Plaintiff complains that even if the ALJ's analysis of the form's conclusions was adequate, the ALJ said nothing about the limitations in the body of report, wherein Dr. Ruffing stated that "[d]ue to her emotional state, [Plaintiff will] . . . struggle to manage the concentration, persistence, and pace required in a typical eight hour work day environment." (Id.) Plaintiff further complains the magistrate judge erred in relying upon the ALJ's rejection of Dr. Ruffing's form since it was a "checkbox" form because "even if" the Fourth Circuit allowed such forms to be given less weight, this rationale was not relied upon by the ALJ and thus constitutes "impermissible *post hoc* rationale." (Id. at 6-7.)

The Court agrees with the Magistrate Judge's analysis. Although Plaintiff complains that the ALJ said nothing of Dr. Ruffing's statement that [d]ue to her emotional state, [Plaintiff will] . . . struggle to manage the concentration, persistence, and pace required in a typical eight hour

work day environment," the record belies this argument. The ALJ's decision notes Dr. Ruffing's assessment of Plaintiff:

> [Dr. Ruffing] concluded that [Plaintiff] could follow work rules and use judgment 100% of the time; relate to co-workers, interact with supervisors, and deal with the public 70% of the time; deal with ordinary work stresses and maintain attention and concentration 50% of the time; and function independently 60% of the time. Dr. Ruffing also concluded that the claimant could understand, remember, and carry out simple job instructions 100% of the time; understand, remember, and carry out detailed (but not complex) job instructions 80% of the time; and understand, remember, and carry out complex job instructions 60% of the time. Dr. Ruffing further concluded that, for 40% of the time or less, the claimant could behave in an emotionally stable manner, relate predictably in social situations, and demonstrate reliability, although she could maintain personal appearance 100% of the time. Dr. Ruffing's markings on his assessment form are somewhat difficult to read, but these appear to be his intended results.

(Tr. 20.) In assessing Plaintiff's RFC, the ALJ stated,

> Quite frankly, I found [Dr. Ruffing's] above summarized assessment form . . . to be difficult to read or to practically apply, so I am relying primarily on his narrative report. However, I again note that his diagnosis was simply "dysthmia," which is considered to be a milder form of depression. As noted above, Dr. Ruffing **concluded that the claimant would have difficulty with concentration due to anxious emotional symptoms, but I have accounted for this with the above noted residual functional capacity limitation to low stress jobs**.

(Id. at 25 (emphasis added).)

It is difficult to imagine how better the ALJ could have analyzed Dr. Ruffing's opinion. Plaintiff faults the ALJ for noting Dr. Ruffing's form was difficult to read. However, it is clear from the record that the ALJ diligently endeavored to read the form and apparently did so, albeit with difficulty. Moreover, the ALJ specifically notes that Dr. Ruffing's opinions have been accounted for in the RFC, which limits Plaintiff to "performing low stress jobs (no high production pace or public interaction)." (Tr. 23.) Plaintiff's objection is overruled.

Plaintiff's final objection concerns the analysis of pain. The Magistrate Judge rejected

Plaintiff's argument that the ALJ failed to engage in the proper analysis of Plaintiff's complaints of pain and concluded the ALJ's decision was supported by substantial evidence. (See R&R at 11-15.) Regarding Plaintiff's argument that the ALJ erred in not specifically discussing Dr. Thompson's opinion that she has a "pain disorder associated with both psychological factors and general medical condition" and fibromyalgia, the Magistrate Judge noted Plaintiff's medical records do not support a diagnosis of fibromyalgia. (R&R at 13.) Magistrate Judge Rogers further noted that Dr. Thompson's opinion that Plaintiff had a pain disorder was based on a single evaluation "based primarily on the Plaintiff's self-reporting claim of neuropathy all over her body." (Id. at 14.) The Magistrate Judge concluded that "[s]ubstantial evidence supports the ALJ's determination that Plaintiff's testimony was not credible." (Id. at 15.) Plaintiff objects to the Magistrate Judge's conclusion, stating the ALJ "never made a determination as to whether any of the Plaintiff's impairments could be reasonably expected to produce the pain the Plaintiff alleged." (Objections at 7.) Plaintiff also complains that the Magistrate Judge "failed to even address the Plaintiff's assignment of error in the ALJ's failure to mention Dr. Thompson's opinion that Fowler had a somatoform disorder and whether her somatoform disorder could be expected to produce the pain Fowler alleged." (Id.)

The Court agrees with the Magistrate Judge. As noted above, Plaintiff complains that the ALJ failed to mention Dr. Thompson's opinion that Fowler had a somatoform disorder and whether that disorder could be expected to produce the pain Fowler alleged. (Objections at 7.) Judge Seymour described somatoform disorders in Bowen v. Astrue,

> Somatoform disorder is the name given to a category of psychiatric conditions, all characterized by physical symptoms that suggest a medical disorder, but which cannot be fully explained by another diagnosis. Included in this category of

> disorders are hypochondriasis disorder, body dysmorphic disorder, pain disorder, which is characterized in part by complaints of pain that causes significant stress or dysfunction but which cannot be explained by medical professionals, and somatization disorder, which generally involves a lengthy medical history reflecting physical complaints that cannot be adequately explained by another diagnosis.

Bowen v. Astrue, No. 8:09-CV-2694-MBS, 2011 WL 1163502, at *23 n.16 (D.S.C. Mar. 29, 2011). The ALJ thoroughly described Dr. Thompson's opinions:

> On July 6, 2006, Ron O. Thompson, Ph.D., performed a consultative psychological evaluation of the claimant. After an interview and psychological testing, Dr. Thompson noted the claimant's reported history of insomnia, and diagnosed dysthymic disorder secondary to general medical condition, **pain disorder** associated with both psychological factors and general medical condition, and psychosocial stressors. The claimant admitted that most of her psychological problems were stress related: she and her husband were living with his parents, her husband was often out of work, and she was raising a mentally retarded child. The claimant reported that she felt she was disabled due to "neuropathy all over my body." Dr. Thompson noted that psychomotor activity appeared within normal limits; the claimant was cooperative and maintained good eye contact; and even his observation that her ambulation appeared to be within normal limits. In his summary, Dr. Thompson concluded that the claimant appeared to be experiencing reactive dysthymia secondary to multiple situation stressors, and that her "stress and coping skills appeared to be somewhat low." Dr. Thompson concluded that the claimant's psychological factors appeared to be somewhat low." Dr. Thompson concluded that the claimant's psychological factors appeared to be mild-moderate in terms of mood, with mild "cognitive slippage." Exhibit 4F.

(Tr. 18 (emphasis added).)

The ALJ therefore *did* note Dr. Thompson's diagnosis of pain disorder. Plaintiff complains, however, that the ALJ also erred in failing "to mention . . . whether [Plaintiff's] somatoform disorder could be expected to produce the pain [she] alleged." (Objections at 7.) Such error, if any, was clearly harmless on the record before the Court. The ALJ discredited Plaintiff's "portray[al of] herself as essentially housebound and bedridden" for reasons already

discussed:

> (a) the "fairly high volume of medical evidence repeatedly shows that there is no basis for the limitations she testified to," (b) the record contains the appearance of drug-seeking behavior, and (c) claimant demonstrated a limp when she saw Dr. Korn in June of 2006 for a physical examination, but a few weeks later, in July of 2006, Dr. Thompson noted Plaintiff's "ambulation appeared to be within normal limits" when Plaintiff went for a psychological evaluation.

(Tr. 24.) The ALJ concluded that Plaintiff's "statements concerning the intensity, persistence and limiting effects of her pain and other reported symptoms are not credible." (Tr. 25.) The Court concludes that, to the extent there was error in failing to discuss whether the somatoform disorder could be expected to produce the pain alleged, such error was harmless. See Goodwater v. Barnhart, 579 F. Supp. 2d 746, 757 n.2 (D.S.C. 2007) ("The Court notes that while the ALJ did not explicitly state that these conditions could reasonably cause the symptoms alleged by the plaintiff, any error is harmless because substantial evidence supports the ALJ's finding that they did not cause symptoms of the severity alleged."); see also Mickles v. Shalala, 29 F.3d 918, 921 (4th Cir. 1994). The Court concludes the ALJ's decision was supported by substantial evidence.[1]

---

[1] Plaintiff argued in her brief that the Appeals Council should have explained consideration of new evidence that was submitted to it. The Magistrate Judge rejected this argument, concluding the evidence submitted to the Appeals Council was not "'new' evidence' that related to the relevant time period." (R&R at 16.) The Magistrate Judge concluded that "under the circumstances of this case, . . . the Appeals Council did not err in failing to articulate specific findings relative to the additional evidence submitted by the Plaintiff." (Id. at 18.) Plaintiff did not object to this portion of the Magistrate Judge's R&R. (See generally Objections.)

## CONCLUSION

It is therefore **ORDERED**, for the foregoing reasons, that the Report and Recommendation is **ADOPTED**, and the decision of the Commissioner is **AFFIRMED**.

**AND IT IS SO ORDERED.**

The Honorable Richard Mark Gergel
United States District Judge

**Charleston, South Carolina**
**July 14, 2011**